IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-4232 |
| ) | |
| THE LINKS AT COLUMBIA, LP and ) | |
| LINDSEY CONSTRUCTION ) | |
| COMPANY, INC. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of the United States, at the request of the Administrator of the United States Environmental Protection Agency (EPA) by and through its undersigned attorneys, alleges as follows:

INTRODUCTION

This is a civil action for civil penalties brought pursuant to the Clean Water Act, 33 U.S.C. § 1319(b), (d), against The Links at Columbia, a Limited Partnership, and Lindsey Construction Company, Inc., (the Defendants) for violations of the conditions of National Pollution Discharge Elimination System (NPDES) permits issued by the state of Missouri pursuant to the Clean Water Act, 33 U.S.C. § 1342, for the discharge of pollutants at its construction site in Columbia, Missouri.

JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 33 U.S.C. § 1319(b).

2. Venue is proper in this District pursuant to 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395, because the Defendants conduct business in this District, and because the violations occurred in this District.

3. Notice of the commencement of this action has been given to the state of Missouri in accordance with 33 U.S.C. § 1319(b).

## DEFENDANTS

4. The Links at Columbia is a limited partnership organized under the laws of the State of Arkansas and is a "person" as defined in 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

5. Lindsey Construction Company is a corporation organized under the laws of the State of Arkansas and is a "person" as defined in 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

6. On or about May 2, 2005, The Links at Columbia applied for and was registered as a foreign limited partnership with the Missouri Secretary of State, authorizing it to transact business in Missouri.

7. Lindsey Construction Company is also registered with the Missouri Secretary of State and is authorized to transact business in Missouri.

8. On or about July 29, 2005, The Links at Columbia became the owner of an approximately 118-acre site known as The Links of Columbia located on Clark Lane (in the SW ¼ of Section 3, Township 48 North, Range 2 West and the NE ¼ of Section 9 and NW ¼ of Section 10, Township 48 North, Range 12 West) in Boone County within the city of Columbia, Missouri (the "Site").

## STATUTORY AND REGULATORY AUTHORITY

9. The Clean Water Act (CWA or the Act) is designed to restore and maintain the chemical, physical and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

10. To accomplish the objectives of the Act, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person except in certain circumstances including compliance with a permit issued by EPA or a state authorized by EPA to administer the NPDES Program pursuant to Section 402 of the CWA. See 33 U.S.C. §§ 1342.

11. CWA Section 502(12), 33 U.S.C. § 1362(12), defines the term "discharge of a "pollutant" as, inter alia "any addition of any pollutant to navigable waters from any point source."

12. Section 402 of the CWA requires permits for storm water discharges "associated with industrial activity." See 33 U.S.C. § 1342(p).

13. EPA regulations define the term "storm water discharge associated with industrial activity" to include, among other things, storm water discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of five or more acres of total land area. See 40 C.F.R. § 122.26(b)(14)(x).

14. Persons who discharge or who propose to discharge "storm water associated with industrial activity" are required to apply for an individual permit or seek coverage under a promulgated storm water general permit. 40 C.F.R. § § 22.21(a)&(c). If EPA or the issuing state determines that coverage under a general permit is appropriate, it will issue a permit number to the applicant, who is then authorized to discharge in accordance with the terms of the permit.

15. EPA has authorized the Missouri Department of Natural Resources (MDNR) to administer the federal NPDES permit program in Missouri pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. EPA maintains concurrent enforcement authority for violations of the CWA or permits issued thereunder.

16. Missouri regulations provide that "[a]ll persons who . . . disturb land that would result in a storm water point source shall apply . . . for the permits required by the Missouri Clean Water Act." Mo. Code Regs. Ann. Title 10 CSR 20-6.200(1)(A). The Missouri General Permit requires a person to obtain coverage under the Missouri General Permit if that person engages in construction defined as industrial activity by 40 C.F.R. § 122.26(b)(14)(x) and either owns the property on which the construction is occurring, has operational control of construction project plans and specifications, or has day-to-day operational control of those activities which are necessary to ensure compliance with permit conditions. 10 Mo. CSR 20-6.200.

17. The State of Missouri has issued a general storm water permit for construction sites, which authorizes storm water discharges and certain non-storm water discharges from construction activity in each state. Missouri General Storm Water Permit No. MO-R100NXX (hereinafter "MO General SW Permit"). This General Permit governs storm water discharges associated with construction or land disturbance activity (e.g., clearing, grubbing, excavating, grading, and other activity that results in the destruction of the root zone) that are performed in a city, county, or other governmental jurisdiction that has a storm water control program for land disturbance activities.

18. The Missouri General Storm Water Permits require the permit holder to develop a storm water pollution prevention plan (SWPPP) which sets forth a plan to control

and reduce pollutants in storm water discharges from construction activities. See MO General SW Permit at 4, ¶ 8.

19. A central requirement of the SWPPP is the selection of Best Management Practices (BMPs). BMPs are measures implemented to prevent or minimize the discharges of pollutants to waters of the United States. They include measures to prevent erosion (such as temporary stabilization of exposed areas and the scheduling of the project to minimize the amount of land that is being graded at any particular time) and measures to capture sediment before it leaves the site (such as silt fences, vegetative buffers, inlet protection and sedimentation basins).

20. The Missouri General Storm Water Permit requires the permit holder to implement the SWPPP and properly operate and maintain BMPs as conditions throughout the term of the land disturbance project. See MO General SW Permit, Requirements and Guidelines, Paragraph 8, Pages 4-5; Paragraph 12, Page 6.

21. The Missouri General Storm Water Permit also requires the permit holder to inspect the site during construction to ensure that BMPs are properly installed and maintained, to correct problems within a certain time period, to document inspections, and to update the SWPPP to reflect changing site conditions. See MO General SW Permit at 6, ¶ 10.

22. The Missouri General Storm Water Permit also requires that discharges shall not cause violations of the general criteria in the Water Quality Standards (10 C.S.R. 20-7.031(3)), which states, in part, that no water contaminant, by itself or in combination with other substances, shall prevent the waters of the state from meeting, inter alia, the following condition: waters shall be free from substances in sufficient amounts to cause the formation

of … unsightly or harmful bottom deposits or prevent full maintenance of beneficial uses. See MO General SW Permit at 4, ¶ 2.

23. The CWA authorizes the Administrator of EPA "to commence a civil action for appropriate relief, including a permanent or temporary injunction," when any person is in violation of 33 U.S.C. § 1311 or of any permit issued pursuant to 33 U.S.C. § 1342. See 33 U.S.C. § 1319(b).

24. The CWA, as modified by the Debt Collection Improvement Act of 1996, Pub. L. 104-134, and the Civil Monetary Inflation Rule, 61 Fed. Reg. 69360 (December 31, 1996), 40 C.F.R. § 19.4, provides, in part, that any person who violates 33 U.S.C. § 1311, or any permit issued pursuant to 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 for each violation prior to March 15, 2004.

## FACTUAL ALLEGATIONS

25. Hominy Branch is a perennial water way, flowing approximately 5,000 linear feet through the Site, and is a navigable water within the meaning of 33 U.S.C. § 1362. It has several tributaries that are also located within the Site.

26. The surface water runoff from the Site discharges into Hominy Branch and unnamed tributaries of Hominy Branch. Hominy Branch empties into Hinkson Creek, which empties into the Missouri River, about 12 miles directly to the southwest of the Site, or about 27 miles along these waterways.

27. The runoff and drainage from the Site is "storm water" as defined by 40 C.F.R. § 122.26(b)(13).

28. Storm water contains "pollutants," as defined by Section 502(6) of the CWA, 33 U.S.C. § 1362(6). Storm water runoff from the Site results in addition of pollutants from a point source to navigable waters, and thus is the "discharge of a pollutant" as defined by CWA Section 502(12), 33 U.S.C. § 1362(12).

29. At relevant times, the Site had "storm water discharges associated with industrial activity" as defined by 40 C.F.R. § 122.26(b)(14)(x) and required a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

30. On or about January 20, 2006, the Missouri Department of Natural Resources granted The Links at Columbia, LP, coverage under the Missouri General Storm Water Permit and issued it permit number MO-R100N68. The general permit expired on April 25, 2007. The Links at Columbia, LP, applied to MDNR for permit renewal on April 9, 2007, and MDNR extended the permit to authorize continued work on the Site.

31. In its permit application, The Links at Columbia, LP, indicated that the Site would comprise 117.85 acres with approximately 88 acres to be disturbed.

32. Lindsey Construction Company, Inc., oversaw construction activities at The Links of Columbia. Among other things, Lindsey Construction Company, Inc., entered into contracts with Phillips Grading and Construction, Inc., for grading and earthwork at the Site.

33. Lindsey Construction Company, Inc., employees also supervised inspection, maintenance, and installation of erosion controls.

34. In addition, Lindsey Construction Company, Inc., retained Allstate Consultants, LLC, to conduct on site weekly and after rainfall event inspections and J.C. Landscaping to repair existing erosion controls and/or add additional controls.

35. As the entity with day-to-day control over site activities and/or responsibility for installation and maintenance of the BMPs at the Site, Lindsey Construction Company, Inc., was a person obligated to obtain authorization to discharge storm water from the construction activities at the Links of Columbia and to comply with the permit once authorization was granted.

36. On or about March 1, 2006, The Links at Columbia, LP, with contractor Lindsey Construction Company, Inc., began land disturbance activities at the Site. The Defendants operated and/or directed hired contractors to perform the construction activities to develop the Site. These activities at the Site included clearing, grading and excavation, which disturbed five or more acres of total land area or which disturbed less than five acres of total land area that was part of a larger plan of development or sale.

37. MDNR inspected the Site on or about July 21, 2006 and April, 17, 2007. During the July 2006 and April 2007 MDNR inspections, the MDNR inspector observed sediment discharge in Hominy Branch and other unnamed tributaries within Site boundaries. During the inspections, MDNR noted numerous ways in which the Defendants had failed to comply with the Missouri General Storm Water Permit at the Site, including failure to properly implement and maintain best management practices, failure to comply with narrative water quality standards, failure to update and amend the SWPPP, and failure to adequately perform documented site inspections.

38. Following these inspections, MDNR issued of a Letter of Warning on August 2, 2006 and Notice of Violation on April 30, 2007, respectively.

39. In early 2007, MDNR contacted EPA about the land-disturbing activities at the Site and requested that EPA conduct an inspection at the Site.

Page 8
Case 2:11-cv-04232-NKL   Document 1   Filed 08/31/11   Page 8 of 12

40. On May 9, 2007, EPA inspectors performed an inspection of the Site to evaluate the management of storm water at the site in accordance with the CWA.

41. During the May 2007 EPA inspection, the EPA inspector observed many of the same violations found during the July 2006 and April 2007 inspections. The EPA inspector observed sediment discharge in Hominy Branch and the tributaries to Hominy Branch located within Site boundaries. The EPA inspector also noted numerous ways in which the Defendants had failed to comply with the Missouri General Storm Water Permit at the Site. On May 9, 2007, EPA issued The Links at Columbia a Notice of Potential National Pollution Discharge Elimination System Permit Violations, identifying the violations noted during the EPA inspection.

42. On August 8, 2007, EPA issued a Findings of Violation, Order for Compliance to The Links at Columbia, LP, (Docket Number CWA-07-2007-0070) for violations of the Missouri General Storm Water Permit at the Site. The violations listed in this order were:

   a. Failure to properly implement and maintain BMPs. Specifically, silt fences were not properly installed, and numerous silt fences were undermined, overrun, or filled with sediment; drain inlet protection mechanisms were inadequately maintained; and significant vehicle track-out was observed on Clark Lane.

   b. Failure to comply with narrative water quality standards. Specifically, significant deposition of sediment was observed at the two storm water outfalls on the west bank of Hominy Branch. Sedimentation was also observed in the receiving streams.

   c. Failure to properly implement the SWPPP. Specifically, the Defendants failed to properly implement SWPPP provisions pertaining to: phased grading and construction, sequencing of activities including the installation of sedimentation basins, and proper implementation and maintenance of best management practices.

   d. Failure to update and amend the SWPPP. Specifically, Defendants did not amend the SWPPP in response to inadequate erosion controls in areas where

    the existing type or quantity of erosion controls were insufficient to prevent sediment-laden runoff from entering the receiving stream.

  e. Failure to perform and document site inspections. Specifically, Defendants did not perform documented site inspections at a minimum of once per week for each week during active land disturbance, did not perform documented inspections in response to every heavy rain event, and did not keep all reports at a site that is readily available from the permitted site.

  43. On September 18, 2007, EPA inspectors performed a subsequent inspection of the Site under the authority of Section 308(a) of the CWA, 233 U.S.C. § 1318(a). During this inspection, EPA noted progress in the development of the Site, including the grass sodding of 90% of the disturbed areas since the May, 2007 inspection. However, the inspector still found significant sediment in Hominy Branch and noted that some areas remained out of compliance with the SWPPP. These deficiencies included: a lack of a series of rock ditch checks; ineffective sediment barriers at a storm water inlet; improper rinsing of concrete trucks and lack of a designated area for such activity; and potential deficiency in recordkeeping and observation following significant precipitation. The EPA inspector also reviewed inspection logs from Allstate Consultants, LLC, and found that there was a significant delay in BMP implementation.

## CLAIM FOR RELIEF

  44. The United States alleges and incorporates by reference Paragraphs 1 through 43.

  45. On numerous occasions The Links at Columbia, LP, and Lindsey Construction Company violated the terms and conditions of the Missouri General Storm Water Permit issued by the State of Missouri pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, including but not limited to the following violations:

  a. Failure to properly implement and maintain BMPs;

b. Failure to comply with narrative water quality standards;

c. Failure to properly implement the SWPPP;

d. Failure to update and amend the SWPPP; and

e. Failure to perform and document site inspections.

46. Pursuant to 33 U.S.C.§ 1319(d) and 40 C.F.R. § 19.4, each defendant is liable for civil penalties of up to $32,500 per day for each violation of its Missouri General Storm Water Permit occurring after March 1, 2006.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that this Court:

A. Assess civil penalties against the Defendants of up to $32,500 per day, as appropriate, for each violation at the Links at Columbia Site;

B. Award the United States its costs and disbursements in this action; and

C. Grant any such further relief as this Court deems just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

_8/29/11___     By:     s/ Sara Colangelo Wyche
SARA COLANGELO WYCHE
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8916

Sara.Wyche@usdoj.gov
Member of the Maryland Bar

BETH PHILLIPS
United States Attorney

By:    s/ Charles M. Thomas_____
CHARLES M. THOMAS, Mo. Bar No. 28522
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East 9th Street, Rm. 5510
Kansas City, Missouri 64106
(816) 426-3130
(816) 426-3165 (fax)
Charles.Thomas@usdoj.gov
Attorneys for Plaintiff

OF COUNSEL:

SARAH T. LABODA
Assistant Regional Counsel
U.S. EPA, Region VII
901 North 5th Street
Kansas City, KS